IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN ASHLEY<br>580 Massie Rd.<br>Charlottesville, VA 22903<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530<br><br>      Defendant. | Civil Action No.  13-1873 |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief.  Plaintiff seeks the release of a non-prosecution agreement (an "NPA") made between the United States Attorney's Office for the Southern District of Texas and ABC Professional Tree Services, Inc. ("ABC") from the Department of Justice ("DOJ") and its component, the Executive Office for United States Attorneys ("EOUSA").  Plaintiff is statutorily entitled to the disclosure of ABC's non-prosecution agreement ("ABC's NPA") and defendant has improperly withheld the requested records in violation of the law and in opposition to the strong public interest in understanding the judicial system and why admitted wrongdoers are not criminally prosecuted.

1

**Jurisdiction and Venue**

2. This Court has subject-matter jurisdiction over this matter and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

3. Plaintiff Jonathan Ashley is a librarian at the University of Virginia School of Law (the "Law School"). Specifically, Ashley is a business reference librarian conducting research on behalf of Brandon L. Garrett. Garrett is a professor of law engaged in scholarship regarding the criminal justice system. Garrett's scholarship seeks to make an academic contribution to the legal field and public discourse by examining important facets of the criminal justice system and by providing access to important sources of information to journalists, the general public, and scholars engaged in legal research.

4. Defendant DOJ is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 702. The EOUSA is the specific component of the DOJ that is the official-record keeper for the United States Attorneys' offices.

**FACTUAL ALLEGATIONS**

**Non-Prosecution Agreements**

1. In the aftermath of the DOJ's decision to forego prosecution in the mid-2000s and enter into NPAs and deferred prosecution agreements ("DPAs") with several major corporations, Garrett published a 2007 *Virginia Law Review* article analyzing the terms of these agreements, the lack of judicial review, and the potential for prosecutorial abuse.[1] Garrett is not alone in his scholarly interest with corporate prosecutions. New York University School of Law has an

---

[1] Brandon L. Garrett, *Structural Reform Prosecution*, 93 VA. L. REV. 853 (2007).

entire program –Program on Corporate Compliance and Enforcement –dedicated to researching the corporate criminal law, directed by leading corporate liability professor Jennifer Arlen.[2] Given the public importance of many federal prosecutions of organizations, Garrett and Ashley created an online resource hosted by the UVA Law Library housing an extensive collection of federal corporate prosecution agreements.[3]

2. As of October 10, 2013, there are over two hundred NPAs and DPAs already available on Garrett and Ashley's website.[4] This collection of NPAs and DPAs makes available to the public critical documents that shed light on why the DOJ would decide not to pursue criminal charges against admitted wrongdoers. Garrett already has a book in contract with Harvard Press analyzing publicly available data about corporate prosecutions. The public has a right of access to such documents as the debate on prosecution agreements escalates.

3. Discontent over these agreements can easily be found in popular media sources. In 2012, Peter J. Henning of the *New York Times Deal Book* referred to DPAs and NPAs as approaching "cookie-cutter justice in corporate criminal investigations," where "[e]veryone by now knows the drill: turn over the results of an internal investigation, highlight how damaging a conviction would be and then offer to pay the fine and put in place an enhanced compliance program. The press release almost writes itself, but it is the rare case in which senior management pays any price."[5] A few months later, a *New York Times* editorial discussing the

---

[2] Areas of Study, Criminal Law, *available at* http://www.law.nyu.edu/academics/areasofstudy/criminal/curriculum.
[3] Brandon L. Garrett and Jon Ashley, Federal Organizational Prosecution Agreements, University of Virginia School of Law, *available at* http://lib.law.virginia.edu/Garrett/prosecution_agreements/home.suphp.
[4] *Id.*
[5] Peter J. Henning, *Deferred Prosecution Agreements and Cookie-Cutter Justice,* N.Y. TIMES DEAL BOOK (September 17, 2012), http://dealbook.nytimes.com/2012/09/17/deferred-prosecution-agreements-and-cookie-cutter-justice/.

DOJ's decision to enter into a DPA with a major British bank harshly criticized the government's actions: "[c]learly, the government has bought into the notion that too big to fail is too big to jail. When prosecutors choose not to prosecute to the full extent of the law in a case as egregious as this, the law itself is diminished."[6]

4. The courts are joining in on the debate as well.  Courts have been skeptical of both NPAs and DPAs, and there is increasing concern that NPAs provide a run-around the judicial process since courts have little say in whether a prosecutor can bring charges or not.[7]  While reporting on United States District Judge John Gleeson's recent criticism of DPAs in the Eastern District of New York, *Forbes* contributor Jonathan Sack noted that "[f]urther, the scrutiny of DPAs could encourage the government to enter non-prosecution agreements (NPAs) in lieu of DPAs, for, as Judge Gleeson observed, judicial supervision does not apply to non-prosecution agreements; the government has virtually unfettered discretion to choose not to charge at all."[8]

5. Prosecution agreements have also been the subject of congressional scrutiny, with members of Congress questioning Mythili Raman, the acting assistant attorney general of the DOJ's Criminal Division on the merits of such agreements.[9]  According to the DOJ's Principles of Federal Prosecution, USAM Chapter 9-27.600, a U.S. Attorney can "enter into a non-prosecution agreement in exchange for a person's cooperation when, in his/her judgment, the

---

[6] Editorial, *Too Big to Indict*, N.Y. TIMES (Dec. 11, 2012) http://www.nytimes.com/2012/12/12/opinion/hsbc-too-big-to-indict.html?_r=0.
[7] Jonathan Sack, *A Plant Grows in Brooklyn: EDNY Judge Scrutinizes Deferred Prosecution Deal*, FORBES (July 31, 2013) http://www.forbes.com/sites/insider/2013/07/31/a-plant-grows-in-brooklyn-edny-judge-scrutinizes-deferred-prosecution-deal/.
[8] *Id.*
[9] *Who Is Too Big to Fail: Are Large Financial Institutions Immune from Federal Prosecution?: Hearing Before the H. Subcomm. on Oversight and Investigations of the H. Comm. on Financial Servs.*, 113th Cong. (2013) (statement of Mythili Raman, Acting Assistant Att'y Gen. of the Department of Justice Criminal Division). *Available at* http://financialservices.house.gov/uploadedfiles/113-25.pdf.

person's timely cooperation appears to be necessary to the public interest and other means of obtaining the desired cooperation are unavailable or would not be effective."[10]  At a congressional hearing before the House Subcommittee on Oversight and Investigations of the Committee on Financial Services, Missouri Representative Emanuel Cleaver posited to Raman the following public sentiment on the DOJ's decision to impose fines versus going to trial: "I think there is a general view out in the world from which I come that the banks are now larger than they were when the economic crisis began.  And that they are simply fined when they are caught in violation of the law.  Then, when we hear that none of the Wall Street culprits have gone to trial, it contributes to this feeling out here that if you have money, you can get off."[11]

6.  Garrett and Ashley's database provides the public a meaningful opportunity to scrutinize the terms of these agreements.  Further, disclosure is in the government's interest since public availability will dispel any myths or false allegations regarding the content of the prosecution agreements.  As stated earlier, there are over two hundred NPAs and DPAs are already publicly available, which weighs against the position that ABC's NPA somehow falls under a FOIA exemption.

### DOJ's Non-Prosecution Agreement with ABC Tree Services, Inc.

7.  According to a press release from the U.S. Attorney's Office in the Southern District of Texas, "ABC is a Houston-based company that provides right of way vegetation management for electric utilities in more than a dozen states."[12]  The press release reveals that ABC "has

---

[10] *Available at* http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/27mcrm.htm#9-27.600.
[11] *Id* at 9.
[12] Press Release, DOJ, S. Dist. Tex., Houston-based Company Admits to Hiring Illegal Aliens: Agrees to Forfeit $2 Million (May 18, 2012), *available at* http://www.justice.gov/usao/txs/1News/Releases/2012%20May/120518%20ABC%20Trees_print.html.

agreed to adhere to revised immigration compliance procedures and to pay $2 million as forfeited funds to the Department of Homeland Security related to revenue derived from the employment of illegal aliens" and in exchange, the government has promised to not criminally prosecute the company.[13]

8.  Despite the EOUSA's determination that the records Plaintiff requested are exempt from the FOIA's goal of open government, the above press release already makes public the sort of information to be found within the agreement EOUSA is withholding.  The press release describes federal investigatory actions taken by the Department of Homeland Security, the nature of ABC's wrongdoing and its subsequent remedial and compliance actions.[14]

### Plaintiff's FOIA Request

9.  By letter dated June 21, 2012, Ashley made a FOIA request to the DOJ for the release of ABC's NPA entered into with the United States Attorney's Office for the Southern District of Texas, with a request for expeditious processing.  Ashley made the request acting as a scholar and as such notified the agency that the information requested was of timely value.

### Defendant's Treatment of Plaintiff's FOIA Request

10. By letter dated August 13, 2012, EOUSA acknowledged Ashley's FOIA request. The agency denied Ashley's request for expedited processing without explanation.

11. By letter dated January 24, 2013, the EOUSA informed Ashley that the records sought are located in the Privacy Act system, and under 28 CFR § 16.81 are exempt from the access provisions of the Privacy Act.  The EOUSA also processed the request under the FOIA and denied in full the release of all responsive records based on the following exemptions:

---

[13] *Id.*
[14] *Id.*

> 5 U.S.C. § 552(b)(4), which concerns trade secrets and commercial or financial information obtained from a person that is privileged or confidential;
>
> 5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and
>
> 5 U.S.C. § (b)(7)(D), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to disclose the identity of a confidential source.

The EOUSA advised Plaintiff of his right to appeal the denial to the Office of Information Policy at the DOJ.

12. By letter dated March 4, 2013, Ashley appealed EOUSA's denial of the requested records.

13. By letter dated March 22, 2013, the DOJ's Office of Information Policy acknowledged receipt of Ashley's administrative appeal from the action of the EOUSA.

14. By letter dated June 27, 2013, the DOJ's Office of Information Policy ("OIP") affirmed on partially amended grounds EOUSA's denial of Plaintiff's request for records. The OIP removed 5 U.S.C. § 552(b)(7)(D) as an exemption under which ABC's NPA would fall and instead added 5 U.S.C. §§ 552(b)(7)(A) and (b)(7)(E). The OIP stated that EOUSA properly withheld information on the following amended grounds:

> 5 U.S.C. § 552(b)(4), which concerns trade secrets and commercial or financial information obtained from a person that is privileged or confidential;
>
> 5 U.S.C. § 552(b)(7)(A), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings;
>
> 5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and

5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

The Office of Information Policy further advised that if dissatisfied with the action on appeal, Plaintiff could file a lawsuit in federal district court under 5 U.S.C. § 552(a)(4)(B).

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

15. Plaintiff repeats and re-alleges paragraphs 1-14.

16. Defendant DOJ has wrongfully withheld agency records requested by Plaintiff by unlawfully construing the FOIA exemptions to cover the requested NPA.

### Requested Relief

Wherefore, Plaintiff prays that this Court:

(1) order Defendant DOJ and its component, EOUSA, to disclose immediately and in their entirety all records responsive to Plaintiff's FOIA requests submitted to the EOUSA on June 21, 2012;

(2) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

(3) provide for prompt proceedings in this action;

(4) award reasonable litigation costs incurred by Plaintiff;

(5) grant such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: November 26, 2013 | Respectfully submitted, |
| | /s/ J. Joshua Wheeler |
| | J. Joshua Wheeler |
| | DC Bar No. 45167 |
| | The Thomas Jefferson Center for the Protection of Free Expression |
| | 400 Worrell Drive |
| | Charlottesville, VA 22911 |
| | Telephone: (434)-295-4784 |
| | Facsimile: (434)-296-3621 |
| | |
| | *Counsel for Plaintiff Jonathan Ashley* |